UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| MARTIN SCOTT BURNETT and | ) | |
| LEONARD BRADLEY WARREN, | ) | |
| | ) | Civil Action No. 6: 06-482-DCR |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GARY MARTIN, et. al, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Plaintiffs Martin Burnett ("Burnett") and Leonard Warren ("Warren") filed this action against two Kentucky State Police ("KSP") troopers in their individual and official capacities, alleging excessive force in connection with the Plaintiffs' November 1, 2005, arrests. [Record No. 1]  Plaintiffs later amended their complaint to name Gary Martin ("Martin") and Larry Miller ("Miller") as the KSP Troopers involved in their arrests.  The matter is currently pending for consideration of Defendant Martin's renewed motion to dismiss the claims asserted against him in his official capacity.[1]  As discussed more fully below, Martin's motion is well-taken and will be granted.

---

[1]     By Order dated August 30, 2007, the Court denied as moot Defendant Martin's earlier motion to dismiss the claims asserted against him in his official capacity because the Plaintiffs were allowed to file an amended complaint.  The dismissal was without prejudice to being renewed in response to the Plaintiffs' amended pleading. [Record No. 33]

## I.      Relevant Facts[2]

Plaintiffs claim that they were questioned in August 2005 concerning threatening statements allegedly made against an unidentified police officer.  The precise nature of the alleged threats is not alleged; however, the Plaintiffs assert that they were actually made by a third person and should not have been taken seriously.  Despite these allegations, they contend that nearly three months later, at 11:00 p.m. on November 1, 2005, they were arrested by Martin and Miller and improperly charged with a felony: first degree terroristic threatening.

After being handcuffed and placed in the back seat of the Defendant's vehicle, the Plaintiffs were transported to State Police Post 11 located in London, Kentucky.  The Plaintiffs contend that during the transport, they were removed from the vehicle, threatened and beaten.  Following the alleged beating, the Plaintiffs assert that they were warned not to advise anyone of what had happened or they would be killed.  Upon their arrival Post 11, other troopers were advised that Burnett and Warren had "tripped over a ditch." [See Record No. 25; Amended Complaint, p. 13.]  However, the Plaintiffs claim that it was obvious to the other troopers that they had been beaten by Martin and Miller.

Burnett and Warren filed this action on October 31, 2006.  Through their Amended Complaint, they have asserted federal and state claims against Martin and Miller based on allegations of: (1) unnecessary, unreasonable, and excessive force and failure to intervene; (2) assault and battery; (3) gross negligence; (4) intentional and negligent infliction of emotional distress; and (5) conspiracy.  The Plaintiffs' prayer for relief seeks a monetary judgment against

---

[2]      Because Martin's motion is filed pursuant to Rule 12 of the Federal Rules of Civil Procedure, the Court's summary of relevant facts will be taken from the Amended Complaint. [Record No. 25]

the Defendants, jointly and severally.  And while the prayer also contains a catch-all request for "any and all other relief" to which they may be entitled, the Plaintiffs have not sought injunctive relief and have not attempted to named any other parties as defendants.

## II.    Martin's Motion To Dismiss

Defendant Martin has not sought to dismiss all of the claims asserted against him. Instead, his motion seeks dismissal of the claims asserted against him in his *official* capacity. Further, in seeking this limited dismissal of claims, Martin has not sought to challenge the factual assertions contained in the pleadings.

Although somewhat confusing, it appears that the Plaintiffs primary contention is that dismissal of the official capacity claims is not appropriate because additional time is needed for discovery.  Further, they argue that, at some point, they may be entitled to seek injunctive relief based on an improper policy or practice of the Kentucky State Police.  However, they concede that, at this time, they have no grounds from asserting that the Defendants' alleged improper actions were in accordance with any such policy or practice.[3]

### A.    The Standard of Review

Martin's motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure which allows a defendant to move for dismissal of all or part of a complaint if it fails to state a claim upon which relief may be granted.  When analyzing the sufficiency of a complaint, the Court applies the principle that a complaint should not be dismissed "unless it

---

[3]    In their response to Martin's motion, the Plaintiffs refer to a newspaper article in which two deputy sheriffs (also, *former* KSP troopers) are accused of assaulting an arrestee after taking him into custody in December 2006. [Record No. 38]  This is hardly relevant to the claims in this case.

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Lillard v. Shelby County Board of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996).  Further, courts must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein."  *Lillard*, 76 F.3d at 724 (quoting *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994)).

In the present case, the Plaintiffs have argued that, "[i]t is simply too early to file a motion to dismiss or a motion to dismiss before discovery is completed."  Further, they contend that they have "demonstrated that genuine issues of material fact [are] in dispute regarding the excessive force they experienced at the hands of the Troopers." [Record No. 29][4] However, a motion to dismiss is based on allegations contained in the relevant pleadings as opposed to facts developed during discovery.  Therefore, contrary to the Plaintiffs' arguments, the Defendant's motion is not premature.

## B.    The Plaintiffs' Federal Claims

Martin has moved the Court to dismiss the federal claims asserted against him because, in his official capacity, he is entitled to Eleventh Amendment immunity from such claims.  As the Defendant correctly notes, absent consent, state entities possess Eleventh Amendment

---

[4]    The Plaintiffs' response to the Defendant's renewed motion to dismiss incorporates by reference the response filed August 14, 2007, in response to Defendant Martin's second motion to dismiss. [See Record No. 38, p. 1.] The Plaintiff's August 14th response [Record No. 29] cites *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681 (6th Cir. 2006), for the proposition that summary judgment is not appropriate in resolving issues of qualified immunity where disputed issues of fact are presented in connection with an excessive force claim.  However, the issue currently before the Court does not present conflicting factual issues or analysis of whether qualified immunity will prevent the Plaintiffs from proceeding with claims against the KSP troopers in their individual capacities.

immunity from actions asserting a violation of federal civil rights. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). And because the KSP is an arm of the executive branch of the Commonwealth of Kentucky, such immunity is afforded to it. Likewise, employees of the KSP sued in their official capacities are entitled to the same Eleventh Amendment protection from federal claims. *See Turker v. Ohio Dept. of Rehabilitation and Corrections*, 157 F.3d 453, 456 (6th Cir. 1998) (under the Eleventh Amendment, a plaintiff cannot sue state employees in their official capacities for monetary damages), and *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1990).

Here, there is no dispute regarding the facts relevant to the Eleventh Amendment inquiry. The Plaintiffs have alleged that Defendant Martin was employed as a KSP trooper on November 1, 2005, and was acting in that capacity at the time of the Plaintiffs' arrest. Further, there is no dispute that the KSP is an arm of the executive branch of the Commonwealth of Kentucky. See KRS § 16.060. As a statutorily created department within the Justice and Public Safety Cabinet, the KSP is tasked with statewide law enforcement jurisdiction. Further, its budget is funded by the Kentucky General Assembly. KRS § 16.050(1). Thus, the KSP is an arm of the central state government of the Commonwealth of Kentucky. Because it has not waived its sovereign immunity for claims such as those being asserted by the Plaintiffs, it is not amenable to damage claims arising from alleged violations of federal civil rights. And as outlined above, Defendant Martin, when sued in his official capacity for monetary damages under 42 U.S.C. § 1983, cannot be held liable for such damages. Regardless of their repeated factual assertions, the Plaintiff

have offered no authority to alter this result.  Accordingly, Defendant Martin's motion to dismiss the federal claims asserted against him in his official capacity will be granted.

### C.      The Plaintiffs' State Law Claims

In addition to asserting a federal claim under 42 U.S.C. § 1983 for alleged unreasonable and excessive force, the Plaintiffs have asserted state law claims against the Defendants for assault and battery (Count II), gross negligence (Count III), negligent and intentional infliction of emotional distress (Count IV), and conspiracy (Count V).  To the extent that these state law claims have been asserted against Defendant Martin in his official capacity, he has moved the Court to dismiss them under a claim of official/governmental immunity.[5]

Under Kentucky law, agencies of the state possess governmental immunity from suit when an action is premised on the agency's performance of a governmental (as opposed to a proprietary) function.  *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001).  Here, there is no dispute that the law enforcement functions of the KSP and its employees are governmental – not proprietary.

As the Supreme Court of Kentucky explained in *Yanero, supra,* at 517-519, governmental and sovereign immunity are separate and distinct concepts that have been used interchangeably in a number of Kentucky appellate decisions.

---

[5]      Governmental immunity is absolute (as opposed to qualified) and extends to the state agency or entity.  When this immunity is extended to employees of state agencies or entities while acting in their official capacities, such immunity is often classified as official immunity.  This immunity extended to employees is also absolute.  When sued in their individual capacities, such employees may also claim qualified immunity. Again, it bears repeating that Martin is not seeking dismiss of the state law claims asserted against him in his individual capacity under a theory of qualified immunity.  Therefore, it is not necessary to examine this issue in the context of the present motion.

> "Governmental immunity" is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency. . . .  The premise is that courts should not be called upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an inadequate crucible for testing the merits of social, political, or economy policy. . . . Thus, a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary function.

*Yanero, supra,* at 519 (citations omitted).  Application of governmental immunity extends to employees acting in their official capacities.  *Id.* at 521-22.  *See also, Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007) ("If a state agency is deemed to have governmental immunity, its officers or employees have official immunity when they are sued in their official or representative capacity.").

In addition to the protections provided to state agencies and employees performing governmental functions, some employees are also entitled to "official immunity."  Once again, the Supreme Court of Kentucky's opinion in *Yanero v. Davis, supra*, provides further guidance in explaining this concept.  As the court noted,

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions.  It rests not on the status or title of the officer or employee, but on the function performed.  *Salyer v. Patrick*, 874 F.2d. 374 (6th Cir. 1989).  Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative [*i.e.*, official] capacity, in which event his/her actions are included under the umbrella of sovereign immunity . . . .  Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled. . . .  But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protections from damages liability for good faith judgment calls made in a legally uncertain environment.

*Yanero, supra,* at 521-22.  *See also, Jones v. Lathram,* 150 S.W.3d 50, 53 (Ky. 2004).

In the event a party seeks dismissal of claims asserted against him in his individual capacity, the qualified immunity analysis requires consideration of a number of factors, including whether the actions were: (1) discretionary or ministerial; (2) taken in good faith; and (3) within the scope of the employee's authority. *Yanero,* at 522. However, such a factual analysis is not required where the focus is on claims asserted against a defendant in his or her *official* capacity.

The Plaintiffs' response to Martin's motion appears to mix and confuse the concepts of official/governmental immunity and qualified immunity. For example, at pages 11-18 of their August 14, 2007 brief [Record No. 29], the Plaintiffs assert that the Defendants were not performing discretionary acts at the time in issue, were not acting in good faith, and were not performing duties within the scope of their authority. Thus, they assert that the Defendants are not entitled to *official* immunity. Citing *Bouggess v. Mattingly*, 482 F.3d 886, 897 (6th Cir. 2007), the Plaintiffs argue that under Kentucky law, when defendants are *sued in their individual capacities*, "public officials and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." [See Record No. 9, p. 15.]

Simply stated, at present, Martin has not moved to dismiss any claims asserted against him in his individual capacity.[6] Thus, issues of good faith and whether the actions were discretionary or ministerial are not relevant at this time. Instead, Martin has moved to dismiss

---

[6]      In their responses filed August 14, 2007, and September 20, 2007, the Plaintiffs state that while they do not have personal knowledge of facts which would support a claim for injunctive relief against Martin or the KSP to prohibit the use of excessive force as a matter of improper custom, policy or practice, they speculate that such might be developed during discovery.  [See Record No. 29, pp. 19-24; Record No. 38, pp. 2-3.] In addition to the fact that the KSP is not a party to this proceeding, the Court notes that such speculation will not prevent dismissal of claims asserted against Martin in his official capacity.

claims asserted against him in his official capacity. And as discussed herein, with respect to the state law claims, Martin is entitled to the protections provided by official/governmental immunity because, at the time alleged by the Plaintiff, Martin was employed as a trooper by the Kentucky State Police and performing a governmental (as opposed to proprietary) function.

Finally, while the Plaintiffs have made other arguments in their responses, those arguments appear to be either: (i) unrelated to the issues before the Court, (ii) a regurgitation of their version of facts (which are not being contested for purposes of the present motion), or (iii) are simply a derivation of the arguments discussed above. However, the Plaintiffs have not offered any relevant legal support to counter Defendant Martin's limited motion. Therefore, Martin's motion to dismiss the state law claims asserted against him in his official capacity also will be granted.

### III.    Conclusion

For the reasons discussed herein, it is

**ORDERED** that Defendant Gary Martin's renewed motion to dismiss the claims asserted against him in his official capacity [Record No. 35] is **GRANTED**.

This 16th day of October, 2007.



Signed By:

_Danny C. Reeves_

United States District Judge